[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
06/21/99
THOMAS K. KAHN
CLERK

_____

No. 97-5757

_____

D. C. Docket No. 92-6832-CV-UUB

COMMODITY FUTURES TRADING COMMISSION,

Plaintiff-Appellee,

versus

A. FRANCIS SIDOTI,
MARC STEPHEN WUENSCH,
CARRINGTON FINANCIAL CORP.,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(June 21, 1999)**

Before TJOFLAT, BLACK and CARNES, Circuit Judges.

BLACK, Circuit Judge:

Appellants A. Francis Sidoti, Marc Stephen Wuensch, and Carrington Financial Corp. (Carrington) appeal the district court's final judgment finding them liable for violations of the Commodity Exchange Act (the Act) and Commodity Futures Trading Commission (CFTC) Rules, enjoining further violations, and ordering disgorgement of all profits they obtained from January 1, 1990 to September 29, 1997, the date of the order. We affirm the district court's findings of liability and its injunction against further violations, but vacate its disgorgement order and remand for entry of judgment consistent with this opinion.

## I. BACKGROUND

In 1990, Appellant Sidoti, through his company The Francis Group, agreed to provide capital to Clifford Bagnall, Jr.'s commodities brokerage houses in return for 90% of their profits. One such brokerage house was First Sierra, which began operating as Trinity Financial Group, Inc. (Trinity) in 1991. Trinity had offices in Fort Lauderdale and Aventura, Florida, and its salespeople, or associated persons (APs), solicited customers to trade commodity futures contracts, as well as options on commodity futures contracts. Appellant Wuensch supervised the APs in Trinity's Aventura office. Although Bagnall, Jr. was Trinity's sole record shareholder, officer, and director, Sidoti directed the distribution of 90% of Trinity's profits to himself. After Bagnall, Jr. died in December 1991, Wuensch took over Trinity's Aventura

office, which began operating as Carrington on January 6, 1992.  Wuensch became Carrington's sole shareholder, officer, and director.

In August 1992, the CFTC filed a complaint against Appellants, charging:

1. that Carrington and Trinity APs committed fraud, in violation of Sections 4b(a) and 4c(b) of the Act, codified at 7 U.S.C. §§ 6b(a), 6c(b), and CFTC Rules 33.7(f) and 33.10, codified at 17 C.F.R. §§ 33.7(f), 33.10, and  charging Carrington and Trinity[1] with liability for the fraud as principals, pursuant to Section 2(a)(1)(A)(iii) of the Act, codified at 7 U.S.C. § 4, and CFTC Rule 1.2, codified at 17 C.F.R. § 1.2;

2. Wuensch individually with liability for Trinity's and Carrington's fraud, as an aider and abettor, pursuant to Section 13(a) of the Act, codified at 7 U.S.C. § 13c(a), and as a controlling person, pursuant to Section 13(b) of the Act, codified at 7 U.S.C. § 13c(b);

3. Carrington and Wuensch with failure to supervise adequately Carrington APs, in violation of CFTC Rule 166.3, codified at 17 C.F.R. § 166.3; and

4. Trinity and Sidoti with filing a false and misleading registration statement in that they failed to identify Sidoti as a principal and subsequently failed to correct

---

[1] Trinity consented to an order of permanent injunction in June 1993 and is not a party on appeal.

3

the deficiency, in violation of Sections 4f, 6(c), and 8a(1) of the Act, codified at 7 U.S.C. §§ 6f, 13b, 12a(1), and CFTC Rules 3.10 and 3.31, codified at 17 C.F.R. §§ 3.10, 3.31.

On September 29, 1997, after a lengthy bench trial the district court entered its final judgment and the accompanying orders finding Appellants liable for all alleged violations, enjoining further violations, and ordering disgorgement of all profits obtained from January 1, 1990 to the date of the order.[2]

## II. DISCUSSION

A. <u>Liability</u>

We review the district court's factual findings for clear error. *Anderson v. Bessemer City*, 470 U.S. 564, 573-74, 105 S. Ct. 1504, 1511-12 (1985). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety," we must uphold the factual findings even if we would have weighed the evidence differently. *Id.* The district court's findings need only be "plausible." *Id.*

---

[2] The district court issued a partially-reported order, entitled Findings of Fact and Conclusions of Law, in which it found ample evidence of fraud at Trinity and Carrington and concluded that Appellants were liable for all alleged violations. *See Commodity Futures Trading Comm'n v. Trinity Fin. Group, Inc.*, Comm. Fut. L. Rep. (CCH) ¶ 27,179 (S.D. Fla. Sept. 29, 1997) (unofficially reporting the Findings of Fact portion of the order). In addition, the district court issued an unreported order, entitled Order of Permanent Injunction, Disgorgement, and Other Ancillary Equitable Relief, in which it enjoined further violations and ordered Appellants to disgorge all profits obtained from 1990 to the date of the order. Finally, the district court entered final judgment in favor of the CFTC based on the above two orders.

1. Carrington liable for the fraud of its agents

The district court found Carrington liable for the fraudulent acts and omissions of its APs, pursuant to section 2(a)(1)(A)(iii) of the Act, which makes a principal liable for acts of its agents. 7 U.S.C. § 4. The district court found Carrington APs engaged in fraudulent solicitations, in violation of Sections 4b(a) and 4c(b) of the Act and CFTC Rules 33.7(f) and 33.10.[3] Specifically, the court found Carrington APs misrepresented the profitability of options trading by: (1) falsely telling customers certain market conditions or seasonal trends almost guaranteed profits; (2) baselessly telling customers they could quickly make tremendous returns on their investments; and (3) distorting their bad track records. The district court also found Carrington APs downplayed the degree of risk involved in investing in commodity options. For instance, they told customers the risks of trading commodity options were non-existent or minimal. The district court related in great detail the abundant evidence of fraudulent solicitations by Carrington APs.

---

[3] Sections 4b(a) and 4c(b) of the Act prohibit fraud in connection with transactions in commodity futures contracts and options on commodity futures contracts. CFTC Rule 33.10 makes it unlawful to "cheat or defraud or attempt to cheat or defraud any other person," to "make or cause to be made to any other person any false report or statement," or "[t]o deceive or attempt to deceive any other person" in connection with any commodity option transaction. CFTC Rule 33.7(f), which bolsters Rule 33.10, states that making standard written risk disclosures "does not relieve . . . an introducing broker . . . from . . . the obligation to disclose all material information to existing or prospective option customers."

On appeal, Carrington does not dispute the evidence of false statements by its APs, but asserts the false statements do not constitute material fraud. Recognizing that misstatements about the profitability and risk of trading commodity options would be material, Carrington contends it made various disclosures of risk in account opening documents and post-solicitation compliance interviews that rendered those misrepresentations immaterial. We seriously doubt whether boilerplate risk disclosure language could ever render an earlier material misrepresentation immaterial. Moreover, in this case Carrington APs intentionally diluted the effectiveness of any such risk disclosures. For example, Carrington APs described the risk disclosures as mere "formalities" and encouraged customers not to read the documents or pay attention to the scripted language of the compliance interviews. We hold the record amply supports the district court's conclusion that Carrington APs engaged in material fraud.

2. Wuensch liable for the fraud at Carrington and Trinity

The district court found Wuensch secondarily liable for the violations of Carrington and Trinity as an aider and abettor, and alternatively, as a controlling person. The district court found Wuensch knowingly associated himself with the fraud perpetrated by Carrington and Trinity APs and sought by his actions to make that fraud succeed. The district court found Wuensch, who does not dispute he was

a controlling person, failed to act in good faith and knowingly induced the acts constituting the violations at Trinity and Carrington.

While not challenging the district court's findings of fraud at Trinity and Carrington, Wuensch maintains on appeal that there was insufficient evidence he aided, abetted, or deliberately ignored the fraud there. Under Section 13(a) of the Act, an individual is liable as an aider and abettor if he "willfully aids, abets, counsels, commands, induces, or procures the commission of, a violation of any of the provisions of [the Act or CFTC Rules]." 7 U.S.C. § 13c(a). Under Section 13(b) of the Act, an individual is liable as a controlling person if he "directly or indirectly, controls any person who has violated [the Act or CFTC Rules]. In such action, the Commission has the burden of proving that the controlling person did not act in good faith or knowingly induced, directly or indirectly, the act or acts constituting the violation." 7 U.S.C. § 13c(b).

Wuensch hired supervisory personnel with industry experience limited to firms with a history of sales fraud. Out of Carrington's 32 APs, 23 previously worked for firms disciplined for sales practice fraud, and the other 9 previously worked for firms against which fraud claims were pending. Wuensch never provided sales training or otherwise acted to address these deficiencies. The record supports the district court's conclusion that Wuensch was deliberately indifferent to the fraud at Carrington and

Trinity and therefore is liable as a controlling person. *See, e.g.*, *Monieson v. CFTC*, 996 F.2d 852, 861 (7th Cir. 1993) ("[A] controlling person has a duty to act; he cannot simply avoid addressing the issue and hope it goes away."); *Mattingly v. United States*, 924 F.2d 785, 792 (8th Cir. 1991) ("[T]he element of knowledge may be inferred from deliberate acts amounting to willful blindness to the existence of fact or acts constituting conscious purpose to avoid enlightenment.").

3. Carrington and Wuensch liable for failure to supervise Carrington employees

The district court found Carrington and Wuensch liable under CFTC Rule 166.3 for failure to supervise adequately Carrington APs. The district court specifically found Carrington and Wuensch failed to establish or maintain meaningful procedures for detecting fraud by their employees and Wuensch knew of specific incidents of misconduct, yet failed to take reasonable steps to correct the problems.

On appeal, Carrington and Wuensch do not challenge the district court's findings of fraud at Carrington, but they assert there was insufficient evidence they failed adequately to supervise Carrington employees. We hold the record supports the district court's conclusion that Carrington and Wuensch did not adequately supervise Carrington employees.

## 4. Sidoti liable for failure to register

The district court found Sidoti liable for failing to register as a principal of Trinity. Pursuant to sections 4f and 8a(1) of the Act, the CFTC promulgated CFTC Rule 3.10, which requires all principals of an introducing broker (IB) to register. Trinity submitted an application for registration as an IB on November 15, 1990, but neither Trinity nor Sidoti ever identified Sidoti as a principal. The district court found that Sidoti was a principal of Trinity and that by concealing his status as a principal and by failing to file the required statements, Trinity and Sidoti made a "false and misleading statement of material fact in [a] registration application," in violation of Sections 4f, 6(c) and 8a(1) of the Act and CFTC Rules 3.10 and 3.31.[4]

On appeal, Sidoti concedes he failed to register, but asserts he was not a principal of Trinity. CFTC regulations define a "principal" of an IB to include: (1) any person who has the direct or indirect power to exercise a controlling influence over the IB's activities; (2) any beneficial owner of ten percent or more of the outstanding shares of any class of stock; or (3) any person who has contributed ten percent or more of the IB's capital. CFTC Rule 3.1, codified at 17 C.F.R. § 3.1.

---

[4] Section 6(c) of the Act and CFTC Rule 3.31 are companion provisions to Rule 3.10. *See* 7 U.S.C. § 9 (authorizing the CFTC to seek to prohibit from future trading any person who "has willfully made any false or misleading statement of a material fact in any registration application or any report filed with the Commission"); 17 C.F.R. § 3.31 (requiring the reporting of any deficiencies, inaccuracies, or changes in prior registration statements).

Contrary to Sidoti's contention, the record contains evidence that Sidoti exercised a controlling influence over the activities of Trinity. In fact, Charles Bagnall III, Trinity's own accountant, testified extensively about Sidoti's controlling influence over Trinity. In any case, the record shows Sidoti capitalized Trinity through the Francis Group and First Sierra. We therefore affirm the district court's findings, and we now turn to the remedies the district court fashioned.

B.    Remedies

We will not disturb the district court's choice of an equitable remedy except for abuse of discretion. *See Godfrey v. BellSouth Telecommunications, Inc.*, 89 F.3d 755, 757 (1/1th Cir. 1996). The district court issued a permanent injunction against further violations. In light of the likelihood of future violations, the district court did not abuse its discretion in enjoining further violations of the Act. *See SEC v. Carriba Air, Inc.*, 681 F.2d 1318, 1322 (11th Cir. 1982); *SEC v. Blatt*, 583 F.2d 1325, 1334 (5th Cir. 1978).

The district court also ordered Appellants to disgorge all profits obtained from January 1, 1990, to September 29, 1997, the date of the order. None of the parties disputes the propriety of disgorgement as an equitable remedy. Nevertheless, the CFTC has the burden of proving the disgorgement figure reasonably approximates the amount of unjust enrichment. *See CFTC v. American Metals Exchange Corp.*, 991

10

F.2d 71, 79 (3d Cir. 1993) ("[T]he district court should keep in mind the limitation placed on its equitable powers by this requirement that there be a relationship between the amount of disgorgement and the amount of ill-gotten gain."); *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1231 (D.C. Cir. 1989). As a corollary to this rule, the district court may not disgorge profits obtained without the aid of any wrongdoing. *See First City*, 890 F.2d at 1231 ("Since disgorgement primarily serves to prevent unjust enrichment, the court may exercise its equitable power only over property causally related to the wrongdoing. . . . [D]isgorgement may not be used punitively.").

1.    Disgorgement of Profits from Carrington and Wuensch

The CFTC contends and the district court agreed that the systematic and pervasive nature of fraud at Trinity and Carrington made all of their profits unlawful. Wuensch and Carrington, however, challenge the breadth of the disgorgement order. They contend the district court should have limited the period of disgorgement to the period of time as to which the district court received evidence of fraud. We agree.

Based upon an in limine motion filed by the CFTC, the district court limited the evidence at trial to pre-1995 conduct by Appellants. Therefore, there was no record evidence of fraud in 1995, 1996, or 1997. A district court may not order disgorgement of profits for a period during which there was no record evidence of fraud. *Cf. First City*, 890 F.2d at 1231. If the CFTC had wanted the district court to disgorge profits

11

after 1994, it should have introduced evidence of fraud occurring after 1994. Accordingly, we hold the district court abused its discretion by ordering disgorgement of post-1994 profits.

2. Disgorgement of Profits from Sidoti

The CFTC contends Sidoti's failure to register as a principal of Trinity provides the nexus for deeming illegal all profits received by him in connection with Trinity. Sidoti asserts the district court should not have ordered disgorgement from him at all because his failure to register as a principal, by itself, does not justify disgorgement. We agree.

The CFTC did not allege Sidoti knew of, much less participated in, any of the fraudulent conduct at Trinity or Carrington. The CFTC merely alleged Sidoti failed to register as a principal of Trinity. Sidoti's failure to register, by itself, is not causally related to Trinity's ill-gotten profits. Indeed, the CFTC has not cited and we are not aware of any case in which a court has disgorged profits from a defendant whom it finds liable solely for failure to register as a principal. A district court may not disgorge profits, unless there is record evidence the defendant is liable (either directly or indirectly) for fraud. *Cf. First City*, 890 F.2d at 1231. Accordingly, we hold the district court abused its discretion by ordering disgorgement of profits from Sidoti.

III. CONCLUSION

In accordance with the foregoing, we affirm the district court's judgment as to liability, as well as its order enjoining future violations, but vacate the district court's disgorgement order and remand for entry of judgment consistent with this opinion.[5]

AFFIRMED in part, VACATED in part, and REMANDED.

---

[5] On February 8, 1999, the CFTC advised us pursuant to Fed. R. App. P. 28(j) of an order the district court issued during the pendency of this appeal. On January 22, 1999, the district court issued an order accepting in part and rejecting in part the receiver's report and recommendation (1/22/99 Order). It appears that after the receiver determined the amount of disgorgement, the district court changed its mind as to one of the issues on appeal before us—disgorgement from Sidoti. Notwithstanding the order from which the parties appealed, the district court now writes:

> Given the lack of evidentiary basis to support the conclusion that the [profits] that Sidoti received from Trinity constitute[] ill gotten gains that can be causally connected to his failure to register, the Court declines to approve the Receiver's recommendation that disgorgement [] be ordered against Sidoti.

1/22/99 Order at 4. We need not address whether the district court had jurisdiction to enter the 1/22/99 Order, as this opinion moots the issue of disgorgement from Sidoti and requires the district court to revise the amount of disgorgement from Carrington and Wuensch.