**COMMODITY FUTURES TRADING COMMISSION, Plaintiff,**

v.

**MIDLAND RARE COIN EXCHANGE, INC., et al., Defendant.**

No. 97–7422CIV.

United States District Court, S.D. Florida.

Oct. 20, 1999.

Gregory George Mocek, Daniel Salsburg, Lawrence Norton and Laura Flippin, Washington DC, for Plaintiff CFTC.

Marc Nurek and Todd Stone, Ft. Lauderdale, FL, for Defendant Edward Tabb.

Marc Wites and Larry Bonner, Miami, FL, for Defendants Global Asset Management and Mark Modist.

Carl Schmitt, North Bay Village, FL, for Defendants Midland Rare Coin Exchange, Robert Mitchell and Terry Sands.

## OMNIBUS ORDER

DIMITROULEAS, District Judge.

THIS CAUSE is before the Court upon various motions filed by the parties, including Plaintiff's Motion to File Third Amended Complaint [DE 198], Defendant Global Asset's Motion to Dismiss or for Summary Judgment [DE 186], Defendants Midland, Mitchell, Sands and Tabb's Joinder in Global Asset's Motion [DE 241], Plaintiff's Motion to Strike [DE 201] materials in support of motion to dismiss, Plaintiff's Motion for Summary Judgment against Defendants Midland, Mitchell and

Sands [DE 279] and Defendant Tabb [DE 301], Plaintiff's Motion to Strike [DE 327] materials in support of Tabb's opposition to Plaintiff's summary judgment motion, Plaintiff's Motion for Judgment by Default against Defendants Southwest, Southern Advertising, Quantum Advertising, North American Asset, Globex Bullion and Financial Services Corporation, Globalmark Corporation, and Eurex Marketing Corporation [DE's 288 and 300], Receiver's Motions for Compensation [DE's 229 and 272], Plaintiff and Defendant Tabb's Motions for Continuance [DE's 318 and 320], and Defendant Tabb's Motions for Enlargement of Time to Respond to Plaintiff's Motion for Summary Judgment [DE's 322 and 323]. The Court has carefully considered the motions, and is otherwise fully advised in the premises.

## I. PROCEDURAL BACKGROUND

This case involves an enforcement action by the Commodities Futures Trading Commission ("CFTC") against various individual and corporate defendants for alleged off-exchange sale of futures contracts for precious metals in violation of the Commodity Exchange Act, 7 U.S.C. § 1 et. seq.[1] The CFTC's instant motion for leave to file its Third Amended Complaint seeks to amend the complaint to add individual defendant Mark Modist, the president of corporate defendant Global Asset Management ("Global"), and to add a fraud claim under 7 U.S.C. § 6b against Global. Global opposes the motion on several grounds, including undue delay and futility. Global's futility argument, that the CFTC lacks jurisdiction to regulate spot or forward contracts of precious metals, is the same argument Global makes in its own motion to dismiss or for summary judgment. Given that the jurisdictional

1. The CFTC's original complaint also alleged violations for the sale of foreign currency. These allegations were dropped in the amended complaints pursuant to the United States Supreme Court's decision in *Dunn v. CFTC*, 519 U.S. 465, 117 S.Ct. 913, 137 L.Ed.2d 93 (1997), which held that the CFTC is not authorized to regulate transactions in foreign currency, including the sale of futures and options. Prior to transfer to the undersigned, the Court denied the CFTC's motion for a preliminary injunction [DE 34], a decision upheld on appeal by the United States Court of Appeals for the Eleventh Circuit [DE 90].

issue affects both motions, the Court will address the jurisdictional issue first.[2]

## II. BACKGROUND

The CFTC alleges that the Defendants[3] in this action telemarketed futures contracts for precious metals to the general public, although the Defendants never obtained any precious metals to deliver to their customers and no customers ever requested delivery. In addition, the Defendants charged storage fees and credit fees, although no metals were ever stored by Defendants, and such charges were not disclosed to consumers.

## III. DISCUSSION

The CFTC's Second Amended Complaint alleges in Count I violations of 7 U.S.C. § 6b(a)(i)-(iii) in that the Midland common enterprise and the Globex common enterprise engaged in telemarketing of consumers that involved false representations regarding the amount of past profits made in the commodities offered, that little or no risk was involved, and that the Defendants are legitimate, well-established firms in the financial services industry. In addition, the CFTC alleges in Count I that these two groups of defendants allegedly failed to disclose the amount of commissions and the amount the underlying commodities must increase for customers to recoup their investment after commissions, interest and storage fees are paid.

In Count II of the Second Amended Complaint, the CFTC alleges all defendants with violations of 7 U.S.C. § 6(a), regarding the offer and sale of off-exchange commodity futures contracts.[4] It is this section that forms the basis of Global's Motion to Dismiss or for summary

---

**2.** The CFTC asks this Court to deny Global's Motion to Dismiss or for Summary Judgment [DE 186] as moot if the Court grants the CFTC's motion to Amend. See footnote 2 of Plaintiff's Memorandum in Opposition to Global's Motion to Dismiss [DE 202]. While ordinarily the filing of an amended complaint moots pending motions to dismiss the prior complaint, in this case, the parties have fully briefed the jurisdictional issue, which must be addressed in the context of both motions. Moreover, arguments that attack the Court's jurisdiction should be addressed first.

**3.** The Defendants, though alleged to be acting in concert, can be divided up as follows: 1) The "Midland" common enterprise, consisting of Midland Rare Coin Exchange, Inc. (doing business as various forms of "Midland,"), controlling individuals Robert A. Mitchell and Terry A. Sands, and corporate entities Southwest Research Associates, Inc., Southern Advertising and Marketing, Inc., North American Asset Management, Inc., and Quantum Advertising and Marketing, Inc., engaged in telemarketing; 2) The "Globex" common enterprise, which engaged in telemarketing (Eurex) and financing for the purchase of commodity contracts (Globex) consisting of Globex Bullion and Financial Services Corporation, Globalmark Corporation, Eurex Marketing Corporation, and controlling individual Edward N. Tabb; and 3) Global Asset Management, Inc., ("Global") and its principal Mark Modist, who provided financing for the purchase of commodity contracts by customers of the Midland common enterprise and charged monthly credit and storage charges.

**4.** Specifically, the statute states that:

it shall be unlawful for any person to offer to enter into, to enter into, to execute, to confirm the execution of, or to conduct any office business anywhere in the United States, its territories or possessions, for the purpose of soliciting or accepting any order for, or otherwise dealing in, any transaction in, or in connection with, a contract for the purchase or sale of a commodity for future delivery . . . unless—

(1) such transaction is conducted on or subject to the rules of a board of trade which has been designated by the Commission as a "contract market" for such commodity;

(2) such contract is executed or consummated by or through a member of such contract market; and

(3) such contract is evidenced by a record in writing which shows the date, the parties to such contract and their addresses, the property covered and its price, and the terms of delivery; Provided, that each contract market member shall keep such record for a period of three years from the date thereof, or for a longer period if the Commission shall so direct, which record shall at all times be open to the inspection of any representative of the Commission or the Department of Justice.

§ 7 U.S.C. 6(a).

judgment on the CFTC's Second Amended Complaint.

### A. Motion to Dismiss/Summary Judgment on Jurisdiction

The Defendants argue in support of their motion to dismiss or for summary judgment that the commodity sales at issue are exempt from the CFTC's jurisdiction asserted in Count II because they are not futures contracts, but are "spot" or "cash forward" transactions.[5] Although these terms are not defined in the statutes, several courts have described in depth the history, use, and legal significance and distinction of and between these terms. *Commodity Futures Trading Comm'n v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 772–773 (9th Cir.1995), *cert. denied sub nom. Schulze v. Commodity Futures Trading Comm'n*, 519 U.S. 815, 117 S.Ct. 64, 136 L.Ed.2d 26 (1996); *Salomon Forex, Inc. v. Tauber*, 8 F.3d 966, 970–972 (4th Cir.1993), *cert. denied*, 511 U.S. 1031, 114 S.Ct. 1540, 128 L.Ed.2d 192; *Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 318 (6th Cir.1998); *Lachmund v. ADM Investor Services, Inc.*, 191 F.3d 777, 785–87 (7th Cir.1999).

The CFTC has jurisdiction over futures contracts, which are contracts for "future delivery." Such transactions are prohibited unless conducted or subject to the rules of a board of trade designated by the CFTC as a contract market for that commodity. 7 U.S.C. § 6(a); *Lachmund*, 191 F.3d at 785–86. However, the statute excludes from the definition of "future delivery" any "sale of any cash commodity for deferred shipment or delivery." 7 U.S.C. § 1a(11). These latter contracts, otherwise known as "cash forward contracts" are exempt from CFTC regulation. *Andersons, Inc.* at 318; *Lachmund* at 785–86; *CFTC v. Co Petro Marketing Group, Inc.*, 680 F.2d 573, 576–77 (9th Cir.1982). Several federal appellate

courts, although not the Eleventh Circuit, have discussed the factors that should be used to distinguish between those regulated futures contracts, and those cash-forward or spot transactions outside the scope of the CFTC's authority. The Defendants in this case argue that their contracts are outside the CFTC's jurisdiction.

■ A futures contract "enables an investor to hedge the risk that the price of the commodity will change between the date the contract is entered and the date delivery is due—without having to take physical delivery of the commodity." *Noble Metals*, 67 F.3d at 772. The purpose of such contracts is to:

> transfer price risks from suppliers, processors and distributors (hedgers) to those more willing to take the risk (speculators). Since the prices of futures are contingent on the vagaries of both the production of the commodity and the economics of the marketplace, they are particularly susceptible to manipulation and excessive speculation.

*Salomon Forex, Inc.*, 8 F.3d at 971 (footnote omitted).

■ However, "spot" transactions (transactions for immediate sale and delivery of a commodity) or "cash forward" transactions (in which the commodity is presently sold but its delivery is, by agreement, delayed or deferred) are generally considered to be contracts where delivery of the commodity is contemplated by both parties, and thus is not subject to the manipulation, speculation, and other abuses that could arise from the trading in futures contracts, as opposed to trading in the commodity itself. *Salomon Forex, Inc.*, 8 F.3d at 970–71. "Cash forward contracts" have different characteristics from futures contracts:

> In contrast to the fungible quality of futures, cash forwards are generally in-

---

5. This particular motion was filed by Defendant Global. The Midland Defendants and Defendant Tabb have joined in the same motion to dismiss or for summary judgment, though they have filed answers to the Second Amended Complaint. Those who joined in the motion have not argued anything not addressed in greater detail in Defendant Global's motion.

dividually negotiated sales of commodities between principals in which actual delivery of the commodity is anticipated, but is deferred for reasons of commercial convenience or necessity. These contracts are not readily transferable and therefore are usually entered into between parties able to make and receive physical delivery of the subject goods.

*Id.* at 971. Such transactions are typically between two commercial entities or businesses, and do not involve members of the general public offered sales of commodities through telemarketing, as is present in this case at bar.

█ The "narrow" exception for cash forward contracts "is predicated on both parties contemplating and intending future delivery of the actual commodity when immediate delivery would be commercially impracticable." *Noble Metals Int'l, Inc.,* 67 F.3d at 772 (citing *Co Petro,* 680 F.2d at 578; *In re Bybee,* 945 F.2d 309, 313 (9th Cir.1991)). The Ninth Circuit has concluded that to take advantage of the cash forward contract exception under the CEA, "the delivery requirement cannot be satisfied by the simple device of a transfer of title"; instead, the parties must "contemplate physical transfer of the actual commodity." *Noble Metals Int'l, Inc.,* 67 F.3d at 773.[6] The Sixth Circuit has stated that:

> We hold that in determining whether a particular commodities contract falls within the cash forward exception, courts must focus on whether there is a legitimate expectation that physical delivery of the actual commodity by the seller to the original contracting buyer will occur in the future.

> . . . . .

"Self-serving labels" that a party may choose to give its contracts, however, are not themselves dispositive of the

futures/cash forward question: the ultimate focus is on whether the contracts in question contemplated actual, physical delivery of the commodity.

*Andersons, Inc.,* 166 F.3d 308, 318, 319–320.

█ Some additional factors to be used in distinguishing futures contracts from cash-forward contracts include: (1) whether the seller of the contracts entered into these contracts only with producers and not with speculators from the general public; (2) whether the buyers and sellers had the ability to take or make delivery on the contracts; (3) whether the seller relied on actual delivery of the commodity to carry out its business; (4) whether the contracts were clearly tools to accomplish the actual delivery of the commodity in exchange for money; (5) whether delivery and payment routinely occurred between the parties in past dealings; and (6) whether the seller received cash payment on the contracts only upon delivery of the actual commodity. *Andersons, Inc.,* 166 F.3d at 320 (citing *In re Grain Land Cooperative,* 978 F.Supp. 1267, 1273–74 (D.Minn.1997)) (Sixth Circuit held that contracts in question exhibit these characteristics and are thus exempt).

█ In the case at bar, nearly all these factors tilt towards finding that the contracts at issue were futures contracts and thus under the CFTC's jurisdiction. The Defendants marketed to the general public, no customers requested delivery (See Exhibit 2 to Plaintiff's Motion for Leave to Amend [DE 198], Deposition of Mark Modist at p. 53), it is doubtful that such customers wanted pounds of precious metals rather than the profit from speculating on the future price of the metals, the Defendants themselves did not come into possession of the metals, cash payment was

---

**6.** The facts of *Noble Metals* are similar to the facts presented in this case in that precious metals were offered for sale to the general public, and all the contracts explicitly stated that customers are required to take delivery, though customers could extend the time for

delivery. Also, paper title of the commodities were placed in the customers' names. However, few customers ever requested delivery, and the Court rejected Noble Metals' claim that these transactions were cash-forward contracts.

not made contingent upon delivery, and no past dealings of delivered commodities existed between Defendants and their customers. Finally, and most importantly in this Court's opinion, there was no legitimate expectation that physical delivery of the precious metals would occur, and the customers' intention, as evidenced by Defendants' own sales materials, was to speculate and profit from anticipated price rises in the precious metals.

Therefore, the Court concludes that Defendant Global Asset's Motion to Dismiss or for Summary Judgment must be denied. The CFTC, and thus this Court, has jurisdiction over the contracts in question in this case.[7]

### B. Motion to Amend

The CFTC filed a motion for leave to file a third amended complaint to add Mark Modist, the controlling individual for Global Asset, as a Defendant in Counts I and II, and to add Global as a Defendant in Count I. In granting the CFTC's earlier motion to file the second amended complaint, this Court had granted an extension of time to file a third amended complaint to add Mark Modist [DE 161], as the deposition for Mr. Modist had been delayed. On the same day as the Court issued that order allowing an extension of time to file an amended complaint to add Mr. Modist, the Court issued a revised scheduling order with the same date listed for motions to amend or add parties [DE 160]. Global argues in opposition to the motion to amend that the Court did not extend the deadline for anything except adding Mr. Modist, and further argues against adding Mr. Modist altogether.

Rule 15(a) of the Federal Rules of Civil Procedures provides that a party may amend the party's pleading "by leave of court or by written consent of the adverse party" and that "leave shall be freely given when justice so requires." In construing Rule 15(a), the Supreme Court has held that

In the absence of any apparent or declared reason—such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

The instant motion to add Mr. Modist was timely filed pursuant to this Court's March 30, 1999 Omnibus Order. Since the Court has now ruled that jurisdiction is appropriate, the Court rejects Global's futility argument. As to the other arguments concerning undue delay, the Court had previously considered these arguments when it granted the earlier motion to extend time to amend to add Mr. Modist. Thus in exercising its discretion under the Federal Rules, the Court will grant the motion to amend to add Mark Modist as a defendant.

However, the reasons for granting the CFTC's earlier motion to extend time to add Mr. Modist do not extend to adding a count against Global itself. In fact, the CFTC did not even seek an extension of time to amend to add a claim as to Global, only to add Mr. Modist. See docket entry 129. Accordingly, this Court determines that the Motion to File a Third Amended Complaint is granted in part as to Mr. Modist, and denied as to Global itself. The CFTC has already amended its complaint as to Global two times and this third attempt, outside the deadline set by this Court, is denied for failure to cure any deficiencies by amendments previously allowed and for the undue prejudice to Global by adding the fraud claim in Count I. Thus, while the Third Amended Complaint is accepted (see Exhibit I to CFTC's Motion to Amend at docket entry 198), the name "Global" is hereby struck from para-

---

**7.** Since the Court denies Global Asset's Motion, the Court will deny as moot the CFTC's Motion to Strike Materials filed in support of Global Asset's motion to dismiss.

graphs 49 and 51, except for the one appearance in the third line of paragraph 51.

## C. CFTC's Motions for Summary Judgment

The CFTC has moved for summary judgment against Defendants Midland, Mitchell, Sands and Tabb.[8] For individual liability for persons who control an entity that committed an underlying violation, the CFTC has the burden of proving that the person "did not act in good faith or knowingly induced, directly or indirectly, the act or acts constituting the violation." 7 U.S.C. § 13c(b); *Commodity Futures Trading Commission v. Sidoti,* 178 F.3d 1132, 1136 (11th Cir.1999). Defendants Midland, Mitchell and Sands did not file an opposition to this motion. See docket entry 312 (although these defendants did join in Defendant Global's motion to dismiss based upon lack of jurisdiction.) The Court, however, has reviewed on its own the materials submitted in support of the CFTC's motion as to Defendants Midland, Mitchell and Sands. The CFTC seeks not only summary judgment, but the entry of monetary judgments for restitution and disgorgement, the entry of a permanent injunction, and the entry of findings of fact and conclusions of law. The Court has reviewed the pleadings, memoranda, exhibits, affidavits, and other discovery materials submitted by the CFTC in support of its motion. Thus fully advised, the Court determines that no genuine issue of material fact exists as to the instant motion. The Court will thus grant the CFTC's motion for summary judgment as to Defendants Midland, Mitchell and Sands, and will separately enter findings of fact, conclusions of law, and a permanent injunction, including monetary judgment for restitution and disgorgement.

■ As to the CFTC's motion with respect to Defendant Tabb, Defendant Tabb filed an opposition resting principally on the jurisdictional argument described above.[9] As noted above, the Court rejects the jurisdictional argument. Despite Defendant Globex's artfully drafted and sophisticated marketing materials, entitled "Physical Commodity Investment Program" (See Exhibit C to Defendant Tabb's opposition),[10] it is not conceivable that members of the public ever intended to take possession of pounds of gold, silver, platinum or palladium sold through Midland in this case. The testimony at the preliminary injunction hearing [11] by Defendant Modist, president of Global, cited by Defendant Tabb in his opposition, is belied by his deposition testimony taken this past April, in which he testified that Global's customers never requested delivery of precious metals, Global itself never stored metals, Global never received warehouse receipts for storage or delivery from its alleged source for the metals, and that although he conducted due diligence of the English source for the metals, he never

---

**8.** It is important to note that the Third Amended Complaint does not change in any way the CFTC's allegations against these Defendants. Therefore, the Court will proceed to rule on the pending summary judgment motion now, even though the Third Amended Complaint is deemed filed as of today.

**9.** The Court hereby grants the two motions for extension [DE 322 and 323] filed by Defendant Tabb. The Court also notes that the counsel for Mr. Tabb recently withdrew as counsel for the corporate defendants allegedly controlled by Mr. Tabb, resulting in a default being entered against those corporate defendants. Most of Mr. Tabb's opposition, however, reads as though it were intended as an opposition on behalf of those same corporate defendants.

**10.** The Court hereby denies the CFTC's motion to strike the materials in support of Defendant Tabb's opposition to its motion.

**11.** That hearing was held in December, 1997 before the prior judge assigned to this case, the Honorable Shelby Highsmith of this Court. The Court notes that the ruling issued by Judge Highsmith, denying the CFTC's motion for preliminary injunction, was in the context of the CFTC having to show a substantial likelihood on the merits for a preliminary injunction. Full discovery having now been taken on these issues, the Court reaches a different conclusion than did Judge Highsmith.

saw that this source had any metals. See Exhibit 2 to Plaintiff's Motion for Leave to Amend Complaint [DE 198] Deposition of Mark Modist at pp. 52, 53, 60. Just as this Court cannot conclude that a futures contract is what the CFTC says it is, this Court can also not allow self-serving statements from Defendants to evade the CFTC's legitimate jurisdiction. *Andersons, Inc.*, 166 F.3d at 319–320.

Having decided the legal issues raised by Defendant's Tabb's motion, the Court turns to Defendant Tabb's Statement of Disputed Material Facts [DE 326], and the issues of Tabb's individual liability.[12] Here, the six facts stated are not material to determining Defendant Tabb's liability. First, the CFTC did not allege that Globex did telemarketing itself. Second, whether Midland, Eurex and Globex are separate companies does not affect whether Tabb had a controlling interest in Globex or Eurex, or whether Tabb, through Globex, aided or abetted Midland's violations of the law. In fact, Tabb admits that Globex provided materials regarding its commodity investment program to customers of Midland and Globex. The materials submitted by the CFTC conclusively describe that Defendant Tabb controlled Globex, Eurex and GlobalMark. See Deposition of Joseph Gennitti[13] [DE 294] at pp. 29, 86 (Tabb is President of Globex; owner of Eurex), p. 40 (Tabb paid for Globex work through GlobalMark), pp. 43–44, 54 (Tabb flew to London to meet with English trading houses), and pp. 63–64, 68 (Globex received business through Midland which Tabb helped facilitate). Thus, Tabb has not shown a material issue of fact to preclude the CFTC from prevailing on its motion for summary judgment as to Tabb's liability.

Tabb further argues that Tabb acted in good faith in simply fulfilling orders for its clients Eurex and Midland, and thus is not individually liable under 7 U.S.C. § 13c(b). However, Tabb presents no evidence to rebut the materials submitted by the CFTC. See Exhibits to Tabb Deposition [DE 290];[14] see also CFTC Exhibit 33 [DE 26]. Rather, the materials submitted by Tabb show that Globex did not simply fulfill orders for Midland—Globex's financing and "storage" of metals contracts purchased aided the fraudulent representations made by Midland by providing access to precious metals contracts.[15] See Exhibits C and D to Tabb's Opposition to the CFTC's motion [DE 325]. Thus, whether or not the Commission has proved an absence of good faith by Tabb, the CFTC has met the alternative standard for individual liability by showing that such support by Globex to Midland, through the direct efforts of Defendant Tabb, constitutes a knowing inducement of the selling of precious metals futures contracts in violation of 7 U.S.C. § 6(a). Moreover, the Commission has presented credible evidence, unrebutted by Tabb, that Tabb was President and a founder of Globex and Eurex, an authorized signor on the bank accounts of Globex and Eurex, that he was regularly present in the offices of Globex and Eurex, and that he wrote and provided scripts and

12. The Court notes that Defendant Tabb's opposition contains an important typographical error in its citation of the relevant statute for determining individual liability. The CFTC need only prove that the controlling person "did not act in good faith *or* knowingly induced" the acts constituting the violation. 7 U.S.C. § 13c(b); See page 4 to Defendant's Tabb's opposition.

13. As to the credibility of Mr. Gennitti in his deposition, the Court notes that Defendant Tabb submits an affidavit from Mr. Gennitti as Exhibit F in support of Tabb's opposition to the CFTC's motion [DE 325].

14. The Court takes judicial notice that Defendant Tabb answered nearly all the CFTC's deposition questions by invoking the Fifth Amendment. While this invocation may be a factor in determining factual disputes, such invocation cannot be (and is not in this case) the sole basis for Tabb's liability.

15. Such metals, of course, were never delivered to any consumers. In fact, the nondelivery incurred continuous storage charges, adding further to the profits of Globex at the expense of the individual investors.

marketing materials for Globex and Eurex to use in soliciting customers for the metals futures telemarketing program.

Finally, Defendant Tabb argues that a permanent injunction should not be entered against him as the CFTC has not shown that Tabb engaged in fraud alleged in Count I of the Complaint. Tabb argues that the Customer Account Terms and Conditions and the Risk Disclosure Statement (Exhibits I and J to Tabb's opposition) sent to investors supersede the fraudulent oral representations made by Midland and Eurex telemarketers. However, the Eleventh Circuit has rejected this defense in *CFTC v. Sidoti* by stating: "We seriously doubt whether boilerplate risk disclosure language could ever render an earlier material misrepresentation immaterial." *Sidoti*, 178 F.3d at 1136.

 The CFTC seeks not only summary judgment against Defendant Tabb, but the entry of a monetary judgment for restitution and disgorgement, the entry of a permanent injunction, and the entry of findings of fact and conclusions of law. The Court has reviewed the pleadings, memoranda, exhibits, affidavits, and other discovery materials submitted by the CFTC in support of its motion. Thus fully advised, the Court determines that no genuine issue of material fact exists as to the instant motion. The Court will thus grant the CFTC's motion for summary judgment as to Defendant Tabb, and will separately enter findings of fact, conclusions of law, and a permanent injunction, including monetary judgment for restitution and disgorgement.

### D. Receiver's Motions for Compensation

The Receiver appointed in this case has filed a motion for an award of interim compensation to Receiver and her attorneys for the period September 17, 1998 through January 22, 1999, and a separate motion for interim compensation for the Receiver's accountants from February 5, 1998 through April 29, 1999. The Court will grant all three of these motions, al-though the Court expects better and more detailed descriptions in the future from the Receiver's accountants.

### E. Motions for Default and Continuance

The CFTC has moved for default judgment against seven of the corporate entities charged in the Second and Third Amended Complaint. Since the allegations against each of these companies does not differ from the Second to the Third Amended Complaint, the Court finds that their failure to answer the Second Amended Complaint should result in the entry of a default judgment. The Court has reviewed the pleadings, memoranda and other materials submitted by the CFTC in support of its motion for default judgment, the entry of monetary judgment for restitution, the entry of a permanent injunction, and the entry of findings of fact and conclusions of law. The Court will separately enter a permanent injunction and findings of fact and conclusions of law as to Defendants Southwest, Southern Advertising, Quantum Advertising, North American Asset, Globex Bullion and Financial Services Corporation, Globalmark Corporation, and Eurex Marketing Corporation.

The CFTC and Defendant Tabb moved for a continuance of the trial setting for this case. No opposition to these motions has been noted or filed. The Court notes that it previously had granted the Plaintiff (and by extension Global and Modist) an extension to file dispositive motions as to Global and Modist of thirty days after the Court ruled upon the CFTC's Motion to Amend. Thus, the Court will grant the CFTC's motion for continuance, although given the judgment entered today against Defendant Tabb, his motion is denied as moot.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Global Assets' Motion to Dismiss or for Summary Judgment on

the Second Amended Complaint [DE 186–1 and 186–2] is hereby **DENIED** on its merits;

2. Defendants Midland, Mitchell and Sands and Tabb's Motion to Dismiss, pursuant to their joinder in Global Asset's Motion, is hereby **DENIED;**

3. Plaintiff CFTC's Motion to Strike [DE 201] is hereby **DENIED as moot.**

4. Plaintiff CFTC's Motion for Leave to File a Third Amended Complaint [DE 198] is hereby **GRANTED in part.** The Complaint attached as Exhibit 1 to Plaintiff's Motion to Amend shall be docketed as though it was filed today, with the words "Global" struck from Count I as described above on page 10. Defendants Global Assets and Modist's responses to this Complaint, mindful of this Court's opinion above regarding CFTC jurisdiction over the futures contracts at issue, shall be due by November 12, 1999;

5. Defendant Global Asset's Motion for Oral Argument [DE 213] is hereby **DENIED;**

6. Plaintiff CFTC's Motion for Summary Judgment against Defendants Midland, Mitchell and Sands [DE 279] is hereby **GRANTED.** The Court will separately enter a permanent injunction and findings of facts and conclusions of law;

7. Plaintiff CFTC's Motion for Summary Judgment against Defendant Tabb [DE 301] is hereby **GRANTED.** The Court will separately enter a permanent injunction and findings of facts and conclusions of law;

8. Plaintiff CFTC's Motion to Strike [DE 327] materials in support of Tabb's opposition to Plaintiff's summary judgment motion is hereby **DENIED;**

9. Defendant Tabb's Motions for Enlargement of Time to Respond to Plaintiff's Motion for Summary Judgment [DE 322, 323] are hereby **GRANTED;**

10. Plaintiff CFTC's Motion for Judgment by Default against Defendants Southwest, Southern Advertising, Quantum Advertising, and North American Asset [DE 288] is hereby **GRANTED.** The Court will separately enter a permanent injunction and findings of facts and conclusions of law;

11. Plaintiff CFTC's Motion for Judgment by Default against Globex Bullion and Financial Services Corporation, Globalmark Corporation, and Eurex Marketing Corporation [DE 300] is hereby **GRANTED.** The Court will separately enter a permanent injunction and findings of facts and conclusions of law;

12. Receiver's Motion for Interim Compensation for Accountants [DE 229] is hereby **GRANTED.** The Receiver is authorized to pay as interim fees to Machen, Powers, Disque & Boyle, Chartered, the sum of $20,082.00 in fees;

13. Receiver's Motion for Interim Compensation for herself and Attorneys [DE 272] is hereby **GRANTED.** The Receiver is authorized to pay as interim fees and costs to the Receivor the sum of $1,518.00 in fees and $320.72 for out-of-pocket disbursements and to pay her attorneys, Lyons and Farrar, P.A., the sum of $1,506 in fees and $79,71 in out-of-pocket disbursements respectively;

14. Defendant Tabb's Motion for Continuance [DE 318] is hereby **DENIED as moot;**

15. Plaintiff CFTC's Motion for Continuance [DE 320] is hereby **GRANTED;**

16. The following deadlines shall now apply: Defendants Global and Modist's response to Third Amended Complaint—November 12, 1999; Dispositive motions on Third Amended Complaint as to the CFTC and Defendants Global and Modist—November 23, 1999; Pretrial stipulation and mo-

tions in limine—January 28, 1999; Responses to motions in limine, proposed findings of fact/conclusions of law—February 5, 1999;

17. This case is reset for trial for the two-week calendar commencing Tuesday, February 15, 2000. Counsel for all parties shall appear at a calendar call commencing at 10:00 o'clock A.M. on Friday, February 11, 2000. Unless instructed otherwise by subsequent order, the trial and all other proceedings in this case shall be conducted in Courtroom 203E at the U.S. Courthouse, 299 E. Broward Boulevard, Ft. Lauderdale, Florida.