[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-12136

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 26, 2006
THOMAS K. KAHN
CLERK

D.C. Docket No. 03-00041-CV-J-32-TEM

MARTIN K. EBY CONSTRUCTION CO., INC.,

Plaintiff-Appellant,

versus

JACKSONVILLE TRANSPORTATION AUTHORITY,
a body politic and corporate,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 26, 2006)

Before ANDERSON and DUBINA, Circuit Judges, and Albritton[*], District
Judge.

_____

[*] Honorable William H. Albritton, III, United States District Judge for the Middle District
of Alabama, sitting by designation.

ALBRITTON, District Judge:

Appellant Martin K. Eby Construction Co., Inc. ("Eby") appeals the district court's judgment against it in this case involving a dispute between Eby and Jacksonville Transportation Authority ("JTA"). Eby is a Kansas-based private contractor. JTA is an independent state agency that provides transportation services for Duval County, Florida.

The district court conducted a nine day bench trial in December 2004 and heard closing arguments in January 2005. The district court found for JTA on all of Eby's claims in a thorough and well-reasoned eighty-eight page findings of fact and conclusions of law.

After reviewing the record and the parties' appellate briefs, and hearing oral argument, for the reasons discussed below, we affirm the district court's judgment.

## I. BACKGROUND

The dispute in this case arises from construction of part of the Wonderwood Connector in Jacksonville, Florida. Eby was the winning bidder for the portion of the project which required construction of one bridge to span Greenfield Creek and another to span the Intercoastal Waterway and Pablo Creek.

The issues in this case arise from the temporary access structures which

were required in order to construct the bridges.  Information available to contractors during the bidding process which was relevant to temporary structures was found in various documents which comprised the contract documents, including special contract provisions, environmental permits, and written contractor questions and answers.  Soil boring information, also incorporated as part of the contract documents, revealed that there were areas of very soft soil on the construction site which in some places went to a depth of 45 feet.

Plan sheet drawings provided by JTA also contained information relevant to temporary structures and was incorporated into the contract documents.  The plan sheets showed dirt haul roads and fingers formed by placing fill on top of filter fabric at both Greenfield Creek and Pablo Creek.  The plan sheets did not state that they were not to be used as a design for temporary access structures. Information about temporary structures also was incorporated into the contract documents from a Florida Department of Transportation standard specification which provided that if conditions are encountered at the site differing materially from those indicated in the contract, or if unknown physical conditions of an unusual nature differing materially from those ordinarily encountered and generally recognized as inherent in work provided for in the contract are encountered at the site, if it is determined that the conditions materially differ and

3

cause an increase or decrease in the cost or time required for the performance of the work under the contract, an adjustment will be made.

Eby submitted a request to JTA, which was approved, to make some changes, including flipping the temporary access road reflected in the plan sheets from the south side to the north side of Greenfield Creek. Eby characterizes these changes as cost-saving measures.

Once it began construction of the project, Eby determined that the soft soils it encountered would require temporary access structures to be constructed differently than Eby had anticipated in formulating its bid. When Eby reached the Pablo Creek area of the project, it decided that the soil conditions necessitated dredging and reliance on barges for access, rather than building temporary access structures. Marine-based construction, however, presented inefficiencies because Pablo Creek became too shallow for barges at low tide.

Eby contends that JTA misled bidders into believing that the construction site could be accessed using temporary roads as reflected in the plan sheets of the contract documents, and that Eby formulated its bid based on JTA's plan sheets regarding temporary access structures. At trial, Eby sought over $10 million in damages relating to costs, inefficiencies, and losses incurred in accessing the construction site in and over water and soft soils.

## II. ISSUES

Eby challenges the district court's findings of fact and conclusions of law by raising the following issues on appeal: whether it was proper for the district court to limit its evaluation of Eby's differing site conditions claim to a "Type II" claim analysis; whether the district court properly disregarded the quantity-based payment provisions in the contract in deciding Eby's quantity claim; whether Eby's inclusion of possible cost-saving ideas within its bid precluded Eby from asserting contract claims based on differing site conditions or any other inadequacies or defects in the contract documents; whether the district court's factual determination in support of its conclusion that Eby failed to demonstrate reasonable reliance on the contract documents was clearly erroneous; and whether the district court properly disregarded Florida law, construction industry custom, and public policy in evaluating Eby's claims. Eby contends that four of these five issues challenge a conclusion of law, rather than a finding of fact, by the district court.

## III. STANDARDS OF REVIEW

We review *de novo* a district court's conclusions of law and its application of the law to the facts. *Merrill Stevens Dry Dock Co. v. M/V Yeocomico II*, 329

F.3d 809, 813 (11th Cir. 2003). We review a district court's factual findings for clear error. *Commodity Futures Trading Comm'n v. Sidoti*, 178 F.3d 1132, 1135 (11th Cir. 1999). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, we must uphold the factual findings even if we would have weighed the evidence differently." *Id.* (internal quotations and citation omitted).

## IV. DISCUSSION

Eby's first contention on appeal is that the district court improperly evaluated its differing site condition claim as a matter of law. Eby points to the language incorporated in the contract documents from a standard specification, which is set out above, and draws a distinction between two clauses in that language. Eby describes the first clause as defining a "Type I" claim, and the second as defining a "Type II" claim. According to Eby, a so-called "Type I" claim is a claim that latent conditions differed materially from those indicated in the contract documents, and a so-called "Type-II" claim is a claim that unknown physical conditions of an unusual nature differ materially from those ordinarily encountered and generally recognized as inherent in the construction provided for in the contract documents. Eby states that the district court analyzed the claims brought by Eby only as "Type II" claims.

It does not appear that the "Type I" and "Type II" nomenclature was employed by the district court or the parties at trial. In its lengthy and thorough findings of fact and conclusions of law, however, the district court noted the two types of differing site condition claims. The district court acknowledged Eby's argument that the extent of the soft soil issues could not be determined from the surface because the soil behaved differently than expected, but the district court concluded that the soil boring information incorporated into the contract documents and the contractually required site inspection revealed wet and marshy conditions consistent with what Eby encountered. Within this determination is also a determination, relative to a so-called "Type I"claim, that the contract itself "indicated" the soil conditions. The district court concluded that the differing site conditions claim was just another way to argue a constructability or superior knowledge claim. In evaluating these claims, the district court made credibility determinations; considered and made detailed findings with respect to the testimony of multiple witnesses at trial, including expert witnesses; and made detailed findings with respect to contract documents and photographs. Therefore, the district court did not fail to analyze both types of site conditions claims, but instead made findings of fact and conclusions of law with respect to both types of differing site condition claims, and Eby has not demonstrated that the district

7

court's findings as to either of the different site conditions claims are clearly erroneous. *Eng'g Contractors Ass'n of S. Fla., Inc. v. Metro. Dade County*, 122 F.3d 895, 904 (11th Cir. 1997) (explaining that the clearly erroneous standard applies equally to fact findings which rest on physical or documentary evidence and credibility determinations).

Eby's second argument on appeal is that the district court improperly disregarded the quantity-based payment provisions in the contract and improperly applied a reliance analysis when deciding Eby's quantity claim. Eby states that the district court improperly incorporated the quantities claim into its analysis of Eby's constructability/superior knowledge claims.

The district court specifically analyzed the scope of any breach of contract claim being asserted. The district court reviewed the Amended Complaint, Eby's summary judgment motion, and Eby's Proposed Findings of Fact and Conclusions of Law, and determined that Eby's breach of contract claim was just part of the constructability/superior knowledge claims.

We have reviewed the record with respect to the quantities claim as defined by Eby on appeal. While there is a reference to quantities in JTA's Revised Proposed Findings of Facts and Conclusions of Law, in the Revised Proposed Findings of Facts and Conclusions of Law submitted to the trial court by Eby,

8

there is no request for damages based on a breach of the quantities remedy provision of the contract. Instead, the issue of quantities is linked to other claims. The transcript of the closing arguments at trial also does not reveal a request for damages based on a separate quantities claim. Eby presented some evidence of quantities at trial, but the thrust of the arguments raised before the district court was that the specification of quantity in the contract had bearing on whether the plan sheets contained design or performance specifications, not that there was a separate quantities claim. Because the quantities evidence was presented as evidence in support of other claims, the relevant findings before us for review are findings with regard the constructability/superior knowledge claims, not a separate quantities claim. We discuss below Eby's argument that the district court's conclusion with respect to reasonable reliance in the analysis of the constructability/superior knowledge claim was clearly erroneous.

Eby's next issue on appeal is whether the district court properly determined that Eby's inclusion of possible cost-saving ideas precluded Eby from asserting contract claims based on differing site conditions, or any other inadequacies or defects in the contract documents. Eby argues that its incorporation of cost-saving ideas at Greenfield Creek ought not be held against it in its attempt to recover under the contract.

Whether or not cost-savings is a good idea as a matter of policy does not preclude as a matter of law the district court's consideration of Eby's actions as evidence in its analysis of all of the evidence of reasonable reliance. The finding of no reasonable reliance, which took into account evidence of Eby's conduct, is a factual, not a legal determination.

As stated above, Eby separately challenges the district court's factual determination that Eby failed to demonstrate reasonable reliance on the contract documents. Eby states that this finding is not supported by substantial evidence. Eby specifically contends that the district court made the following findings which were not supported by substantial evidence in the record: that Eby could not have reasonably determined that the plan sheets presented a design specification, that at the time it submitted its bid Eby knew the temporary access structures would require additional reinforcement, that Eby failed to seek clarification of the inconsistencies in the contract, and that reliance was unreasonable because the defect in the contract documents was obvious. Eby's argument essentially is that the district court focused too narrowly on some record evidence and did not properly account for other testimony and evidence.

As stated above in connection with the district court's findings with respect to the differing site conditions claims, the district court made credibility

10

determinations, considered and made detailed findings with respect to the testimony at trial, and made detailed findings based on contract documents and photographs. Based upon our review of the briefs on appeal and the oral arguments, the district court's detailed findings of fact and well-reasoned conclusions of law, and our review of the trial transcript, we conclude that the district court's factual findings are plausible in light of the entirety of the record. *Sidoti*, 178 F.3d at 1135.

Eby finally contends that the district court inappropriately disregarded Florida law, construction industry custom, and public policy in evaluating Eby's differing site conditions and quantities claims. Eby states that the district court failed to apply the differing site conditions and quantities provisions of the contract documents. As already discussed, however, the district court did not disregard Florida contract law, but made findings of fact and conclusions of law with respect to both types of differing site conditions claims, and the district court was not called upon to decide a breach of contract claim under the quantities provisions of the contract.

## V. CONCLUSION

For the forgoing reasons, we affirm the judgment of the district court.

**AFFIRMED**.

11