SECURITIES AND EXCHANGE COM-
MISSION, Plaintiff-Appellee,

v.

CARRIBA AIR, INC., et al.,
Defendants-Appellants.

No. 81–7461.

United States Court of Appeals,
Eleventh Circuit.

Aug. 2, 1982.

---

Martin Zerobnick, John B. Lynn, Thomas D. Birge, Denver, Colo., for defendants-appellants.

Barton S. Sacher, Walter E. Jospin, Atlanta, Ga., Rosalind C. Cohen, Jacob H. Stillman, Robert Lipsher, Washington, D. C., for plaintiff-appellee.

Before TUTTLE, RONEY and CLARK, Circuit Judges.

CLARK, Circuit Judge:

The instant case is an appeal from the issuance of a preliminary injunction by the United States District Court for the Northern District of Georgia. Marvin Winograde and Carriba Air, two of a number of defendants below, contend that the injunction was improper. We have considered all their contentions and we affirm. 516 F.Supp. 120.

Carriba Air is an attempt to create a new commuter airline in the Caribbean. It is descended from Air Caribbean, a venture in which virtually all the principals involved in the instant case were associated and which went bankrupt approximately one month prior to the formation of Carriba Air.

Carriba Air was formed on February 13, 1980, under Colorado law as Air West Indies, Inc. Its name was changed in May 1980 to Carriba Air, Inc. Carriba Air was to fly basically the same routes as Air Caribbean and employ essentially the same employees as Air Caribbean. Marvin Winograde and Gertrude Pollard received 16,-649,054 shares of Carriba common stock plus 1,000,000 warrants to purchase additional shares. Winograde was to be vice president and Pollard was to be secretary-treasurer. Frederick H. Rehm, III, was to be Carriba's president, although his work was to be part-time and primarily directed towards public relations.

In early 1980, Carriba was in need of interim working capital. Through a private offering, Carriba sold 250,000 shares of common stock and 100,000 warrants to purchase common stock for $140,000. On May 30, 1980, Carriba filed a registration statement with the Atlanta regional office of the Securities and Exchange Commission. Carriba planned to sell to the public 12,000,-000 shares of common stock at five cents per share. On August 29, 1980, the registration statement was declared effective and the 12,000,000 shares were offered and sold to the public.

The offering's underwriter received the money from the various investors. It deposited the funds in an escrow account at the Metro National Bank of Denver. These monies were refunded to the investors after the SEC initiated an investigation into the affairs of Carriba and Carriba decided to terminate the offering. On October 24, 1980, Carriba filed with the SEC's Atlanta regional office an amendment to its registration statement requesting leave to withdraw the registration statement. The SEC denied this request.

The court below found that the Carriba prospectus was false and misleading and issued a preliminary injunction against Carriba, Winograde, and the other defendants prohibiting them from:

A. In the offer or sale of common stock of Carriba Air, Inc., or any other security, by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails:

(1) Employing any device, scheme, or artifice to defraud;

(2) Obtaining money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(3) Engaging in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon any purchaser of such securities.

B. In connection with the purchase or sale of common stock of Carriba Air, Inc., or any other security, by the use of any means or instrumentalities of interstate commerce or of the mails:

(1) Employing any device, scheme, or artifice to defraud;

(2) Making any untrue statement of a material fact or omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(3) Engaging in any act, practice, or course of business which operates or

would operate as a fraud or deceit upon any person.

Record at 254. From this order Winograde and Carriba Air bring their interlocutory appeal.

■ This court has jurisdiction over the interlocutory appeal. Under 28 U.S.C. § 1292(a)(1), the Court of Appeals has jurisdiction over appeals from interlocutory orders of district courts granting injunctions.[1]

Second, another preliminary point must be dealt with. The district court in the instant case has essentially enjoined a crime. Early in the development of the common law, equity did enjoin criminal activity.[2] This function was taken over by the Star Chamber until its abolition by the Parliamentarians during the reign of Charles I.[3] After the tragic and tumultuous events of the 1640s, the Chancellor withdrew from the business of enjoining criminal activity. Thus, the famous maxim "equity will not enjoin a crime" came into being.

■ To the present day, "equity will not enjoin a crime" is one of the principles of Anglo-American jurisprudence. It is not, however, an ironclad rule. During the eighteenth century, an exception was established for public nuisances that were also crimes.[4] *See, e.g., Attorney Gen. v. Richards*, 145 Eng.Rep. 980 (1794).

In enacting 15 U.S.C. § 77t, Congress specifically authorized an injunction to issue to prohibit the violation of the securities laws. This was no dramatic departure from previous doctrinal development. Violations of the securities laws are analogous to public nuisances. Thus, under 15 U.S.C. § 77t, criminal activity may be enjoined by the district court.[5]

■ The appellants claim that the district court committed reversible error in

---

1. This point is well established in the case law, *see, e.g., Winfield v. St. Joe Paper Company*, 663 F.2d 1031, 1032 (11th Cir. 1981).

2. *See, e.g., Biere v. Mule* (1388), in 10 Selden Society, Select Cases in Chancery 5 (1896).

3. *See Developments in the Law—Injunctions*, 79 Harv.L.Rev. 994, 1013 (1965).

4. *Id.* at 1014.

5. The statute reads:

(b) Whenever it shall appear to the Commission that any person is engaged or about

failing to require positive proof that there was a likelihood of future violations of the securities laws by Winograde and Carriba. We are required by *Securities and Exchange Commission v. Blatt*, 583 F.2d 1325 (5th Cir. 1978), to consider several factors in determining whether the injunction was properly issued:

> Such factors include the egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of his conduct, and the likelihood that the defendant's occupation will present opportunities for future violations.

583 F.2d at 1334, n.29. The standard of review on this point is that of abuse of discretion. *Securities and Exchange Commission v. MacElvain*, 417 F.2d 1134, 1137 (5th Cir.), *cert. denied*, 397 U.S. 972, 90 S.Ct. 1087, 25 L.Ed.2d 265 (1970).

■ We conclude that the trial court did not abuse its discretion in issuing the injunction. The SEC had demonstrated a pattern of past and present questionable business practices. Blatant and inexcusable violations of the securities laws occurred. The appellants knowingly made material misrepresentations and at least recklessly made material omissions on documents submitted to the SEC. The appellants took no action to correct these misrepresentations and omissions. Indeed, the public offer was withdrawn only after the SEC launched its investigation. It is further likely that the appellants will remain in a position where opportunities for future violations of the securities laws will be abundant. Therefore, the factors enunciated in *Blatt, supra*, are virtually all present in the instant case.

The appellants' offer to cease the conduct in question is not dispositive. In analogous situations under the Fair Labor Standards Act, this circuit has stated that assertions on the part of the defendant that he would cease his wrongful conduct are by no means dispositive. *See, e.g., Mitchell v. Pidcock*, 299 F.2d 281, 286–87 (5th Cir. 1962); *Mitchell v. Raines*, 238 F.2d 186, 188 (5th Cir. 1956). We believe that the trial judge could properly have concluded that absent an injunction there was a reasonable likelihood of securities law violations in the future despite the *mea culpas* and protestations of reformation on the part of the appellants. Therefore, the issuance of the injunction was proper.

■ The appellants contend that venue was improper in the Northern District of Georgia. They assert that the filing of the registration statement in the SEC's Atlanta office was not "an act or transaction constituting the violation" sufficient to confer venue under 15 U.S.C. § 78aa:

> The district courts of the United States, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any

to engage in any acts or practices which constitute or will constitute a violation of the provisions of this subchapter, or of any rule or regulation prescribed under authority thereof, it may in its discretion, bring an action in any district court of the United States or United States court of any Territory, to enjoin such acts or practices, and upon a proper showing a permanent or temporary injunction or restraining order shall be granted without bond. The Commission may transmit such evidence as may be available concerning such acts or practices to the Attorney General who may, in his discretion, institute the necessary criminal proceedings under this subchapter. Any such criminal proceeding may be brought either in the district wherein the transmittal of the prospectus or security complained of begins, or in the district wherein such prospectus or security is received. 15 U.S.C. § 77t(b). For cases enforcing this provision, *see, e.g., Securities and Exchange Commission v. Culpepper*, 270 F.2d 241 (2d Cir. 1959); *Securities and Exchange Commission v. First American Bank & Trust Company*, 481 F.2d 673 (8th Cir. 1973).

liability or duty created by this chapter or the rules and regulations thereunder. Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found. Judgments and decrees so rendered shall be subject to review as provided in sections 1254, 1291, and 1292 of Title 28. No costs shall be assessed for or against the Commission in any proceeding under this chapter brought by or against it in the Supreme Court or such other courts.

It is not necessary, as the appellants maintain, that Carriba be incorporated, transact business, or sell securities in the Northern District of Georgia for venue to be proper there. Rather, the filing of an allegedly false and misleading registration statement or prospectus constitutes an "act or transaction constituting the violation" within the meaning of 15 U.S.C. § 78aa. . The filing of the registration statement and the prospectus are an integral part of the alleged violations.

This is a matter of first impression in the Eleventh Circuit as until recently registration statements were required to be filed in Washington.[6] However, we find the District of Columbia Circuit to be in accord with our position in similar situations. *See, e.g., Securities and Exchange Commission v. Savoy Industries*, 587 F.2d 1149 (D.C. Cir.), *cert. denied*, 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1979); *Investors Funding Corp. v. Jones*, 495 F.2d 1000 (D.C. Cir.1974). Thus, venue was proper in the Northern District of Georgia.

■ The appellants next argue that there is no evidence in the record to support the district court's findings that the Carriba prospectus contained material misstatements and omissions. Mere misinformation or misrepresentation is not sufficient to constitute a violation of the Securities Act; there must be a showing of substantial likelihood that under all the circumstances the admitted fact would have assumed significance in the deliberations of a reasonable shareholder. *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976).

■ We first turn to the standard of review. The district court's findings of fact must not be set aside unless they are clearly erroneous. The Court of Appeals must also give weight to the trial court's opportunity to judge the credibility of the witnesses.

■ We hold that the district court's findings of fact were not clearly erroneous. There is adequate basis in the record supporting its conclusion that the Carriba prospectus contained material misrepresentations and omissions. The prospectus does not fully disclose the close connection of the principles involved in Carriba Air with the bankrupt Air Caribbean and with other failed business ventures. It also is apparent that several false statements were made on the prospectus.

■ The test for determining materiality is whether a reasonable man would attach importance to the fact misrepresented or omitted in determining his course of action. *TSC Industries v. Northway*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976); *Smallwood v. Pearl Brewing Company*, 489 F.2d 579, 603–04 (5th Cir. 1974). Some of the individuals involved with Carriba had been involved in a string of airline failures during the 1970s. Carriba was formed only one month after the bankruptcy of Air Caribbean and was intended to fly upon the same routes. This

---

**6.** *See* 17 C.F.R. 230.455.

information does not clearly come out in the prospectus. Under these circumstances, there can be no doubt of the materiality of the errors and omissions in the prospectus.

■ The appellants maintain that Winograde's "mere review" of the prospectus prior to its dissemination was insufficient as a matter of law to support the district court's finding of scienter. Scienter is a necessary element of a violation of §§ 10(b) and 17(a)(1) of the Securities Act. *See Aaron v. Securities and Exchange Commission,* 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980).

■ Scienter may be established by a showing of knowing misconduct or severe recklessness. The standard in this circuit has been set forth in *Securities and Exchange Commission v. Southwest Coal and Energy Company,* 624 F.2d 1312 (5th Cir. 1980) [7]:

> Proof of recklessness would require a showing that the defendant's conduct was an extreme departure of the standards of ordinary care, . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.

624 F.2d at 1321. Winograde knew that certain statements made in the prospectus were false, as he has admitted this in sworn testimony. Winograde was thus engaged in the dissemination of a known falsehood. It is also clear that he was extremely reckless, to say the least, in not correcting the glaring omissions contained in the prospectus regarding his role in Air Caribbean. Thus, we hold that the requisite level of scienter has been established in the instant case.

■ The appellants argue that because of the escrowing of funds for subscriptions to purchase stock by their underwriter, the receipt of money or property did not occur and thus no violation of §§ 17(a)(2) and 17(a)(3) of the Securities Act of 1933 took place. This argument is without merit. Carriba sold 12,000,000 shares of its stock to investors. Under the terms of the escrow agreement, Carriba had an absolute right to the funds once the offer was successfully completed. The purchasers were committed to investing in Carriba unless the offer fell through.

■ The Securities Act of 1933 must be interpreted broadly by the courts in order to effectuate the Congressional intent to protect investors. *See, e.g., Herpich v. Wallace,* 430 F.2d 792, 806–07 (5th Cir. 1970). We construe the instant transaction to be a "sale" within the meaning of §§ 17(a)(2) and (3) of the Securities Act of 1933. The appellants' argument is merely an imaginative argument from a securities lawyer. It must be rejected.

■ Lastly, the appellants also maintain that the court below committed reversible error in excluding the testimony of two subscribers to the Carriba offering. Specifically, the two investors were offered as witnesses as to the materiality of the misrepresentations and omissions in the prospectus.

A trial court has the discretion to exclude evidence where its probative value is outweighed by other considerations. Such a determination should not be reversed absent an abuse of discretion. *United States v. Hearod,* 499 F.2d 1003, 1004 (5th Cir. 1974).

The district court's finding of materiality was only an interim one for the purposes of issuing the preliminary injunction. It is not dispositive for the litigation as a whole. Further, the record indicates that the court actually heard the testimony of one of the

---

**7.** The Eleventh Circuit is bound by all Fifth Circuit cases handed down prior to the close of business on September 30, 1981 unless and until the Eleventh Circuit en banc speaks on the issue presented. *See, e.g., Rothenberg v.* *Security Management Company, Inc.,* 677 F.2d 64, 65 (11th Cir., May 24, 1982); *Cotton v. Federal Land Bank of Columbia,* 676 F.2d 1368, 1369 (11th Cir. 1982); *United States v. Bizzard,* 674 F.2d 1382, 1385 (11th Cir. 1982).

witnesses and permitted an offer of proof with respect to the testimony of the other witness. We hold that the trial court did not abuse its discretion on this point and we uphold its ruling.

We have examined the contentions of the appellants and have found them meritless. Therefore, we affirm the ruling of the court below.

AFFIRMED.