[PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 26, 2008
THOMAS K. KAHN
CLERK

_____

No. 06-14269

_____

D. C. Docket No. 04-80862-CV-DMM

COMMODITY FUTURES TRADING COMMISSION,


                                                     Plaintiff-Appellee,

versus

WILSHIRE INVESTMENT MANAGEMENT CORPORATION,
NATIONAL COMMODITIES CORPORATION, INC.,
ANDREW ALAN WILSHIRE,
ERIC SCOTT MALCOLMSON,
JAMES JOSEPH RUSSO,


                                                     Defendants-Appellants.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

**(June 26, 2008)**

Before EDMONDSON, Chief Judge, DUBINA, Circuit Judge, and STORY,[*] District Judge.

DUBINA, Circuit Judge:

Appellants Andrew Alan Wilshire ("Wilshire"), Eric Scott Malcolmson ("Malcolmson"), James Joseph Russo ("Russo"), Wilshire Investment Management Corporation ("WIM"), and National Commodities Corporation, Inc. ("NCCI") appeal the district court's award of restitution and civil penalties and issuance of a permanent injunction resulting from violations of the Commodity Exchange Act ("CEA"). Appellants contend that the district court erred in awarding restitution, imposing civil penalties and issuing a permanent injunction. For the reasons set forth below, we affirm in part, vacate in part, and remand.

## I. BACKGROUND

In October 1999, Wilshire created WIM, a registered introducing broker that solicits members of the public to trade options on commodity futures contracts through its associated persons ("APs"). With the exception of a few months during mid-2000, WIM has been in operation since that time, and employed Malcolmson and Russo as APs.

On June 15, 2004, the Commodity Futures Trading Commission ("CFTC")

---

[*]Honorable Richard W. Story, United States District Judge for the Northern District of Georgia, sitting by designation.

2

filed an action against Appellants for violations of the CEA and CFTC regulations promulgated under the CEA. Count I alleged that Malcolmson and Russo violated 7 U.S.C. § 6c(b) (2000) and 17 C.F.R. § 33.10 (2000), which make it unlawful for any person to "cheat or defraud or attempt to cheat or defraud any other person" or to "deceive or attempt to deceive any other person by any means whatsoever" in commodity option transactions. Count I also alleged that WIM, as Malcomson and Russo's employer, was strictly liable for the violations; that Wilshire was liable for the violations as the "controlling person" of WIMC; and that NCCI was jointly and severally liable for the violations due to a guarantee agreement. Count II alleged that Wilshire, as President and CEO of WIM, violated 17 C.F.R. § 166.3 by failing to diligently supervise WIM's APs.

Following a four-day bench trial, the district court found that Malcolmson and Russo both violated the CEA. Specifically, the court found that they had made misleading statements to investors, promised high profits, suggested that other customers were very successful, downplayed the risks of commodity trading, and used seasonal information to suggest profit potential. In addition to holding Malcolmson and Russo liable for these actions, the district court also held WIM, Wilshire, and NCCI liable as alleged in Count I. Moreover, the district court held Wilshire liable as alleged in Count II for failing to diligently supervise

3

Malcolmson and Russo.

As a result of these violations, the district court issued a permanent injunction prohibiting Malcolmson, Russo, and Wilshire from engaging in any commodity-related activity. The district court awarded restitution to all the defrauded customers in the amount of their losses stemming from the violations and imposed a civil penalty of $100,000 each on Malcolmson, Russo, Wilshire, and WIM—the maximum civil penalty authorized by the CEA.

## II. STANDARDS OF REVIEW

We review a district court's factual findings for clear error, and its application of law to facts *de novo*. *Holton v. City of Thomasville Sch. Dist.*, 490 F.3d 1257, 1261 (11th Cir. 2007). The construction of a statutory provision is a "purely legal issue" that is reviewed *de novo*. *Estate of Shelfer v. C.I.R.*, 86 F.3d 1045, 1046 (11th Cir. 1996). We review a district court's choice of an equitable remedy and the grant of a permanent injunction for an abuse of discretion. *CFTC v. Sidoti*, 178 F.3d 1132, 1137 (11th Cir. 1999); *Simmons v. Conger*, 86 F.3d 1080, 1085 (11th Cir. 1996). We review a district court's imposition of civil penalties for abuse of discretion. *See Wright v. Hanna Steel Corp.*, 270 F.3d 1336, 1342 (11th Cir. 2001) (applying abuse of discretion standard to civil penalties imposed under ERISA). "An abuse of discretion occurs if the judge fails to apply the proper

4

legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." *In re Red Carpet Corp. of Panama City Beach*, 902 F.2d 883, 890 (11th Cir. 1990).

### III. DISCUSSION

A. Restitution

1. Whether the district court had authority to order restitution under the CEA

Appellants first argue that the district court erred in awarding restitution because the CEA does not expressly authorize such a remedy. According to Appellants, in an enforcement proceeding brought by the CFTC under 7 U.S.C. § 13a-1, a district court's remedies are limited to injunctions, writs of mandamus or orders affording like relief, and civil penalties. We disagree.

Under the CEA, whenever it appears that "any registered entity or other person has engaged, is engaging, or is about to engage in" a violation of the CEA or CFTC regulations under the CEA, the CFTC may bring an action in district court "to enjoin such act or practice, or to enforce compliance with this chapter, or any rule, regulation or order thereunder." 7 U.S.C. § 13a-1(a). Under § 13a-1(b), the court may issue an injunction or restraining order without bond; under § 13a-1(c), entitled "Writs or other orders," the court may issue "writs of mandamus, or orders affording like relief, . . . including the requirement that such person take

5

action as is necessary to remove the danger of violation" of the CEA.

In *Porter v. Warner Holding Co.*, 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946), the Supreme Court interpreted a similar statute, the Emergency Price Control Act ("EPCA").  The EPCA allowed the Administrator to ask a court "for an order enjoining" violations of the EPCA, "or for an order enforcing compliance with such provision."  Further, "upon a showing by the Administrator that [any] person has engaged or is about to engage in" violations of the EPCA, a court had the power to grant "a permanent or temporary injunction, restraining order, or other order."  The Court determined that "[s]uch a jurisdiction is an equitable one.  Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction." *Id.* at 398.  Further, when the action involves the public interest, a court's equitable powers "assume an even broader and more flexible character." *Id*.  The Court determined that restitution in particular "lies within that equitable jurisdiction" and "is within the recognized power and within the highest tradition of a court of equity." *Id.* at 403.

The CEA's enforcement provision is nearly identical to the EPCA's enforcement provision.  Both provide for "an order enforcing compliance" and "an order enjoining" violations.  Like the EPCA provision for "other orders," the CEA

provides for "[w]rits or other orders" and allows a court to "take such action as is necessary to remove the danger of violation" of the CEA. The CFTC here "invoked the jurisdiction of the District Court to enjoin acts and practices made illegal by the [CEA] and to enforce compliance with the [CEA]. Such a jurisdiction is an equitable one." *Id.* at 397-98.

We have similarly applied the statutory principles in *Porter* to the Federal Trade Commission Act. *See FTC v. Gem Merch. Corp.*, 87 F.3d 466 (11th Cir. 1996). In *Gem Merchandising*, we considered language that enabled the FTC, "whenever [it] has reason to believe that any person . . . is violating or is about to violate [the FTCA]" to "bring suit in district court to enjoin any such act or practice" and enabled the district court to grant a preliminary or permanent injunction. *Id.* at 468; 15 U.S.C. § 53(b). We concluded that the FTCA's grant of authority to issue an injunction carried "the full range of equitable remedies," among which "is the power to grant restitution and disgorgement." *Id.* at 468-69.[1]

---

[1]During oral argument, the United States argued that the enforcement provision of the Securities Exchange Act, which is similar to § 13a-1, has also been interpreted to include equitable remedies. *See SEC v. First City Fin. Corp., Ltd.*, 890 F.2d 1215, (D.C. Cir. 1989) (finding that the full range of equitable remedies was available to the district court). We agree. *See SEC v. Blatt*, 583 F.2d 1325, (5th Cir. 1978)* (finding that "the trial court acted properly within its equitable powers in ordering [the defendant] to disgorge the profits that he obtained by fraud").

*In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

That a court's jurisdiction under § 13a-1 includes equitable remedies is well established among our sister circuits. *See CFTC v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 193 (4th Cir. 2002) ("It is well settled that equitable remedies such as disgorgement are available to remedy violations of the CEA."); *CFTC v. Am. Metals Exch. Corp.*, 991 F.2d 71, 76 (3d Cir. 1993) (finding that a district court had authority to order disgorgement under the CEA); *CFTC v. British Am. Commodity Options Corp.*, 788 F.2d 92, 94 (2d Cir. 1986) (finding that disgorgement is a "necessary and appropriate" remedy under the CEA and that it "effectuates the purpose underlying the [CEA]—protection of the investor"); *CFTC v. Co Petro Mktg. Group, Inc.*, 680 F.2d 573, 582-84 (9th Cir. 1982) (determining that a court has the power to order disgorgement as ancillary relief under the CEA); *CFTC v. Hunt*, 591 F.2d 1211, 1223 (7th Cir. 1979) (concluding that "a district court may compel a violator of [the CEA] to disgorge his illegally obtained profits").

We conclude that the unqualified grant of statutory authority to issue an injunction under § 13a-1 carries with it the full range of equitable remedies, among which is the power to grant restitution. Thus, the district court here had authority to order the Appellants to pay restitution.[2]

---

[2]Appellants' argument that the award of restitution is time-barred is without merit. The two-year statutes of limitations found in 7 U.S.C. § 25 and 7 U.S.C. § 18 only apply to private

8

2. Whether the district court abused its discretion in awarding restitution in the amount of customer losses

Having determined that the district court did have authority to award restitution, we now turn to the issue of whether the district court abused its discretion in determining the amount of restitution. Appellants argue that awarding restitution in the amount of customer loss was a legal remedy, and thus outside the equitable powers of the district court under § 13a-1.

In *Waldrop v. Southern Co. Services, Inc.*, this court defined restitution generally as "an equitable remedy designed to cure unjust enrichment of the defendant *absent consideration of the plaintiff's losses*." 24 F.3d 152, 158 (11th Cir. 1994) (emphasis added); *accord FTC v. Verity Int'l., Ltd.*, 443 F.3d 48, 66-68 (2d Cir. 2006) (determining that "the appropriate measure for restitution is the benefit unjustly received by the defendants[,]" not the amount of the customer loss); *Ellett Bros., Inc. v. U.S. Fidelity & Guar. Co.*, 275 F.3d 384, 388 (4th Cir. 2001) ("Restitution and disgorgement require payment of the defendant's ill-gotten gain, not compensation of the plaintiff's loss."). The award here was based on the amount the customers lost, not the amount of unjust enrichment received by Appellants.

causes of action in district court or before the CFTC. They do not apply to enforcement actions brought by the CFTC under 7 U.S.C. § 13a-1.

9

The Third Circuit has concluded that an award of restitution under § 13a-1 measured in the amount of customer losses is generally improper. *CFTC v. Am. Metals Exch. Corp.*, 991 F.2d 71, 76-79 (3d Cir. 1993). The court reasoned that relief granted pursuant to the court's equitable powers under the CEA "must be remedial and not punitive in nature." *Id.* at 78. According to the court,

> [A]n award of damages in the amount of investor losses may go beyond the scope of a [CEA] enforcement proceeding. Absent a hearing to calculate ill-gotten gains, the disgorgement ordered in an amount equal to investor losses could be a penalty assessment. If investors wish to seek recovery of their losses as a remedy, they are free to do so in an independent civil action against defendants. The hardship of investor losses should not, however, be used as an excuse to impose a remedy under circumstances in which the scope of relief falls outside that remedy's recognized parameters.

*Id.*

In this case, the award was not based on the amount of money that Appellants wrongfully gained by their misrepresentations. Instead, it was based on the amount of money that the customers lost. The equitable remedy of restitution does not take into consideration the plaintiff's losses, but only focuses on the defendant's unjust enrichment. *Waldrop*, 24 F.3d at 158-59. Accordingly, we conclude that the district court abused its discretion in awarding the full amount of customer losses. The proper measurement is the amount that Appellants

wrongfully gained by their misrepresentations.[3]

B. Civil Penalties

Appellants next argue that the district court abused its discretion in imposing the maximum civil penalty on Russo, Malcolmson, Wilshire, and WIM. In evaluating civil penalties under the CEA, we have considered the general seriousness of the violation as well as any particular mitigating or aggravating circumstances that exist. *See JCC, Inc. v. CFTC*, 63 F.3d 1557, 1571 (11th Cir. 1995). Defrauding customers is a violation of the core provisions of the CEA and "should be considered very serious." *Id.* Further, there are no mitigating circumstances present here. As in *JCC, Inc.*, "the violations of the Act at issue here were 'knowingly and repeatedly' committed; we are not dealing with a situation involving an isolated 'mistake' arising from an ambiguous statutory duty or from circumstances that are unique and unforeseeable." *Id.* Additionally, Appellants' post-violation conduct does not warrant a reduction, as Appellants have made no attempt to cure the past violations or provide restitution to the defrauded customers. *See id.* Thus, we conclude that the district court did not

---

[3]Appellants also argue that restitution was improper because there was insufficient evidence that the customers relied on Appellants' misrepresentations. We express no opinion as to whether a finding of reliance is required to award restitution in CFTC enforcement proceedings under 7 U.S.C. § 13a-1. However, even if such a finding was required, there is ample evidence in the record showing that the customers here relied on Appellants' misrepresentations.

abuse its discretion in imposing the maximum civil penalty.

C. Permanent Injunction

Finally, Appellants argue that the district court's injunction prohibiting

Malcolmson, Russo, Wilshire, and WIM from "engaging in any commodity-related

activity" was an abuse of discretion.[4]

The CEA allows a district court, "upon a proper showing," to grant a

permanent injunction. 7 U.S.C. § 13a-1(b). In reviewing the grant of an

injunction, "the ultimate test . . . is whether the defendant's past conduct indicates

that there is a reasonable likelihood of further violations in the future." *SEC v.*

*Caterinicchia*, 613 F.2d 102, 105 (5th Cir. 1980); *see also Sidoti*, 178 F.3d at 1137

(applying this standard to cases under the CEA). Specifically, the following

factors should be considered:

> [T]he egregiousness of the defendant's actions, the isolated or recurrent
> nature of the infraction, the degree of scienter involved, the sincerity of the
> defendant's assurances against future violations, the defendant's recognition

---

[4]Appellants' argument that the injunction violates their constitutional due process rights is without merit. The Supreme Court has determined that "'[t]he touchstone of due process is protection of the individual against arbitrary action of government,' whether the fault lies in a denial of fundamental procedural fairness, or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (citations omitted). Appellants have been denied neither procedural nor substantive due process. The district court issued the injunction after a full trial, thus providing procedural fairness. The reasonable likelihood that Appellants would continue to violate the law is reasonable justification for the injunction, which serves the legitimate governmental objective of protecting consumers from fraud in commodities trading.

of the wrongful nature of his conduct, and the likelihood that the defendant's occupation will present opportunities for future violations.

*SEC v. Carriba Air, Inc*., 681 F.2d 1318, 1322 (11th Cir. 1982).

The district court here considered the past violations by the Appellants with regard to nine customers, including "acts by multiple brokers at multiple times." The court also considered the potential for future violations and found it important that the Appellants "have not acknowledged any wrongdoing, insisting rather that their sales tactics were completely legitimate." *Id*. The court specifically found that their "lack of candor . . . demonstrated at trial belies any intent of making good faith efforts to comply with restrictions in the future." *Id*. at 15-16. Finally, the court determined that the injunction was appropriate "because the violations were blatant, brazen, and repeated." *Id*. at 16.

The district court looked at the Appellants' past conduct and at the potential for future violations, considering many of the factors set out in *Carriba Air*. The district court applied the proper legal standard and followed proper procedures in issuing the injunction, and the findings of fact supporting the injunction are not clearly erroneous. Hence, we find that the district court did not abuse its discretion in issuing the injunction.[5]

_____

[5]Although the injunction here was extensive, the Fourth Circuit has upheld an injunction with language identical to the one at issue here. In *CFTC v. Noble Wealth Data Information Services*, the district court used the same standard—evidence of past wrongdoing and likelihood

13

## IV. CONCLUSION

For the above stated reason, we vacate the award of restitution and remand this case to the district court with instructions to reduce the amount of restitution to the amount that the Appellants gained by their misrepresentations. We affirm the civil penalties and the injunction.

**AFFIRMED** in part; **VACATED** and **REMANDED** in part.

---

of future wrongdoing—to issue a permanent injunction "prohibiting [the defendant] from violating the [CEA] and from engaging in any commodity-related activity, including soliciting customers and funds" because of the "pervasiveness and seriousness of [the defendant]'s violations." 90 F. Supp. 2d 676, 692 (D. Md. 2000). The Fourth Circuit upheld the injunction, simply stating, "Nor did the court err in issuing injunctions against [the defendant]." *CFTC v. Baragosh*, 278 F.3d 319, 329 (4th Cir. 2002). While the conduct in *Noble Wealth* may have been more egregious than the conduct at issue here, these cases show that injunctions broadly prohibiting "commodity-related activity" have been found to be within a district court's authority.